**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 3:18cr108** |
| | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **JUSTIN RASHAAD BROWN,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM ORDER

On March 10, 2021, the Honorable Sylvia H. Rambo sentenced Defendant Justin Rashaad Brown to 180 months of incarceration. (Doc. 109). The sentence was imposed after defendant pled guilty to one count of distribution and possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm by a previously convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 66). His sentence represented the mandatory minimum sentence imposed by the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). That is, the defendant had five prior Pennsylvania convictions for the distribution or possession with intent to distribute controlled substances; one involved cocaine, and the remaining four involved marijuana. [1]

[1] Judge Rambo's sentence, which applied to the ACCA based on defendant's marijuana-related convictions was affirmed by the Third Circuit Court of Appeals. United States v. Brown, 47 F.4th 147, 148 (3d Cir. 2022). The United States Supreme Court also affirmed. Brown v. United States, 602 U.S. 101 (2024). The court will not reconsider Brown's arguments that his

(Doc. 106, Def. Sentencing Memo at ECF p. 12–13). "Because defendants who have repeatedly committed ACCA predicate offenses are 'especially likely to inflict grave harm when in possession of a firearm,' ACCA imposes a higher punishment when they do so." Brown, 602 U.S. at 113 (quoting Wooden v. United States, 595 U.S. 360, 375 (2022)). Per the government, defendant's current projected release date is February 16, 2031. (Doc. 135 at 3).

On May 19, 2026, the Clerk of Court docketed Brown's *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 133). Under this statute, the court may reduce a sentence if it finds that: (1) there are "extraordinary and compelling reasons" which "warrant such a reduction;" (2) the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) indicate reducing the sentence would be appropriate. 18 U.S.C. § 3582(c)(1)(A).

In this matter, Brown seeks early release to provide care for his mother and his 17-year-old son. (Doc. 133 at 4). "'[W]hether any given prisoner has established an extraordinary and compelling reason for release' is a 'threshold question' that determines a prisoner's eligibility for compassionate release."

---

marijuana-related convictions justify a lesser prison sentence. (See Doc. 133 at ECF pp. 9–10).

United States v. Rutherford, 120 F.4th 360, 365 (3d Cir. 2024), aff'd, 608 U.S. 454 (2026) (quoting United States v. Stewart, 86 F.4th 532, 535 (3d Cir. 2023)). After review, Brown has not crossed that threshold with the evidence presented, and the motion will be denied. [2]

**Background**

Brown is incarcerated at FCI-Schuylkill in Minersville, Pennsylvania. (Doc. 133 at ECF p. 11). He avers that his mother is the primary care giver for his son, a teenager, and that his mother is now physically incapacitated. Id. at ECF p. 4. He also alleges that his mother is unable to provide, monitor, or parent his son. Id.

---

[2] Brown's *pro se* filing also includes extended discussion about the harsh and punitive conditions induced by COVID-19, including a statement that "Long before Covid-19 Mr. Brown; was sentenced, and most defendants like Mr. Brown who were sentenced before covid, where the sentencing courts were unable to foresee and consider the harshness of the pandemic, has done so in motions for compassionate release (sic)" (Doc. 133 at ECF pp. 5–8). Brown was sentenced on March 10, 2021. (Doc. 109). The court takes judicial notice that President Donald J. Trump issued a presidential proclamation in March 2020 declaring a national COVID-19 emergency. Procl. No. 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020), *archived at* https://trumpwhitehouse.archives.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak. The court also takes judicial notice that the United States Department of Health and Human Services ended the COVID-19 public health emergency in May 2023. *Centers for Disease Control and Prevention, End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, https://archive.cdc.gov/www_cdc_gov/coronavirus/2019-ncov/your-health/end-of-phe.html.

Brown has not set forth any issues concerning his own health. Consequently, the court will not consider COVID-19 as an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A)(i).

In further support, Brown has supplied a number of documents, including an undated, unsigned "to whom it may concern" letter from his mother, Tracey Smallwood. (Doc. 133-2 at ECF p. 1). Per the letter, Ms. Smallwood suffers from bilateral knee osteoarthritis, chronic pain, and coronary artery disease. Id. The letter also indicates that Ms. Smallwood's three other children are not available to care for her. Id. That is, according to the letter, Ms. Smallwood's one son is deceased, her other son is estranged, and her daughter recently suffered a brain injury, underwent surgery, and cannot provide consistent care or physical support due to her medical condition and ongoing neurological recovery.[3] Id.

Brown's exhibits include a physician certification form for Ms. Smallwood regarding a Pennsylvania Department of Human Services program. (Doc. 133-3 at ECF p. 1). Per Ms. Smallwood, she is deemed eligible for home health services and support rather than assistance in an institutional care setting. (Doc. 133-2 at ECF p. 1). Brown has also supplied a letter addressed to Ms. Smallwood from the Pennsylvania Department of Transportation advising her of

---

[3] Brown has supplied a death certificate for his brother. (Doc. 133-2 at ECF p. 4). Defendant has supplied a letter indicating that his sister was in the care of a neurosurgeon in December 2025 with follow-up visits in January 2026 and March 2026. (Doc. 133-4 at ECF p. 7). Defendant's reply brief includes a letter from Ms. Smallwood dated July 21, 2026 indicating that the defendant's sister lives in Virginia and cannot help her. (Doc. 136-2 at ECF p. 11).

the recall of her driving privileges due to a "[c]ognitive condition." (Doc. 133-3 at ECF p. 3).

A review of Brown's sentencing proceedings indicates that five members of his family spoke on his behalf before Judge Rambo. (Doc. 120). Both Ms. Smallwood and Ms. Smallwood's aunt provided testimony in support of the defendant at that time. Id. at 24–29, 32–35. His cousin described a "tight-knit family." Id. at 20.

To rebut any implication that those other family members are available to provide care, defendant's reply brief includes exhibits appearing to indicate that Ms. Smallwood's aunt obtained a protective order against Ms. Smallwood in the State of Maryland in April 2026. (Doc. 136-2 at ECF pp. 5–10). The protective order appears to have been entered due to threats Ms. Smallwood made toward her aunt on social media. Id.

With respect to J.R.B., Brown's son, he will turn 18 next month. (Doc. 133-5 at ECF p. 1). J.R.B. has been diagnosed with attention deficit hyperactivity disorder. Id. He has an individualized education plan at school. (Doc. 136-2 at ECF p. 3). He has been charged with violating the state truancy statute. Id. at p. 2. According to custody orders entered in the York County Court of Common Pleas, Ms. Smallwood has primary physical custody of J.R.B. and his mother has partial physical custody. (Doc. 133-4). Ms. Smallwood has sole legal custody of

J.R.B. Id. However, the above-referenced letter from Ms. Smallwood does not mention issues with caring for J.R.B. (Doc. 133-2).

The government opposes compassionate release, asserting that the defendant has failed to present extraordinary and compelling reasons to warrant a sentence reduction.[4] (Doc. 135). For the reasons set forth below, the court agrees.

**Analysis**

Under the law, "'extraordinary and compelling' reasons for compassionate release are those that are especially unusual and convincing." Rutherford v. United States, 608 U.S. 454, ___, 146 S. Ct. 1320, 1330 (2026). "'Extraordinary" means 'most unusual,' 'far from common,' and 'having little or no precedent.'" Fernandez v. United States, 608 U.S. 411, ___, 146 S. Ct. 1292, 1302 (2026); Rutherford, 146 S. Ct. at 1330 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 807 (1976)). "'Compelling' means 'tending to convince or convert by or as if by forcefulness of evidence.'" Fernandez, 146 S. Ct. at 1302; Rutherford, 146 S. Ct. at 1330 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 463).

[4] The government verified that defendant exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). (Doc. 135 at 4 n.1).

The "heartland of compassionate release" is defined by a prisoner's personal circumstances. Rutherford, 146 S. Ct. at 1331. To that end, the United States Sentencing Commission is required by law to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Guidelines include personal circumstance considerations. The sections applicable here are as follows:

> **(b) Extraordinary and Compelling Reasons**.--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> . . .
>
> **(3) Family Circumstances of the Defendant.**—
>
> **(A)** The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> . . .
>
> **(C)** The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

U.S.S.G. § 1B1.13(b)(3)(A),(C).

The evidence supplied by Brown is not convincing and does not depict an especially unusual set of circumstances. Regarding J.R.B, Ms. Smallwood is not

the only caregiver available to defendant's child. J.R.B.'s mother enjoys partial physical custody under a court order. (Doc. 133-4 at ECF p. 3). No evidence has been supplied indicating that the order is not being followed. Additionally, J.R.B. will be 18 years old next month. (Doc. 136-2 at ECF p. 3). There is no evidence that J.R.B.'s physical or mental health conditions render him incapable of self-care now or after his next birthday.

That leaves considerations about the conditions of Ms. Smallwood. As indicated above, Ms. Smallwood suffers from bilateral knee osteoarthritis, chronic pain, and coronary artery disease. (Doc. 133-3 at ECF p. 1). A Pennsylvania Department of Transportation ("PennDOT") letter indicates that Ms. Smallwood has an unspecified "[c]ognitive condition." Id. at ECF p. 3.

Nonetheless, with sympathy to Ms. Smallwood, her circumstances are not "most unusual." Bilateral knee osteoarthritis, chronic pain, and coronary artery disease are not uncommon ailments for individuals similarly aged. As for any cognitive condition referenced in the PennDOT letter, that condition has not been disclosed by the defendant with his motion. Additionally, although Ms. Smallwood appears to qualify for a state-funded home healthcare program, such evidence cuts against defendant's family circumstances being extraordinary and compelling. That is, the Commonwealth will pay for caregivers to come into Ms. Smallwood's home and assist her with daily activities. Therefore, Brown would

not be her only available caregiver. Thus, there are no extraordinary and compelling reasons to grant the motion. See United States v. O'Brien, No. 25-1729, 2025 WL 3013125, at *3 (3d Cir. Oct. 28, 2025) (affirming denial of defendant's request for compassionate release because defendant did not show that his 83-year old mother with arthritis, hypertension, and heart disease had no other available caretakers).

Brown has supplied additional evidence attempting to support a sentence reduction under the factors set forth at 28 U.S.C. § 3553(a). As the Supreme Court has made clear, however, "before determining the extent of a reduction based on the § 3553(a) factors, a court must first ensure that a movant is part of the limited class of prisoners who are eligible for such a reduction . . . whether the prisoner can offer extraordinary and compelling reasons that warrant compassionate release." Rutherford, 146 S. Ct. at 1333 (citation modified). Brown has not met this "gatekeeping requirement." Id. Thus, the court need not consider the Section 3553(a) factors in disposing of the motion.[5] Consequently,

[5] If such factors were to be weighed, they would strongly weigh against release. Of the relevant factors, Brown was convicted of distribution and possession with intent to distribute cocaine and for having a gun he was deemed too dangerous to possess by virtue of his five prior drug convictions. With respect to Brown's characteristics, the government has supplied evidence that he has been disciplined in prison for possessing alcohol and other "homemade intoxicants" in his cell three times over the last three years. (Doc. 135-1). He has also been disciplined for possessing a digital camera. Id. Given that these items are contraband in prison like illegal drugs are outside of prison, the defendant has apparently not been deterred by his 15-year sentence, and the public needs to be protected from further crimes. And although it is laudable that defendant has attempted to rehabilitate himself and engage in self-

for the reasons set forth above, Defendant Justin Rashaad Brown's motion for compassionate release will be **DENIED**.[6]

**BY THE COURT:**

Date: 9/21/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**

---

improvement and other courses of study, such rehabilitation does not render him safe for release. The mandatory minimum sentence imposed by Judge Rambo remains necessary to reflect the seriousness of the defendant's offenses and provide the just punishment that Congress intended by enacting the ACCA.

[6] Brown's request for appointment of counsel is also denied. Defendant's compassionate release request lacks arguable merit, and he is not incapable of presenting his case. Tabron v. Grace, 6 F.3d 147, 156 (3d Cir. 1993).